bad women in his house," &c. This statute, with these expositions of it, was in force in Maryland on the 27th February, 1801, and constitutes a part of the authority and jurisdiction of the justices of the peace of this county, who have been appointed under the act of congress of that date. The eighth section of the charter of 1820, so far as it regards security for good behavior, was evidently framed upon the statute of Edward 3d, and its judicial expositions; and, although somewhat enlarged, may be considered as substantially the same. If, then, congress, instead of authorizing the corporation of Washington to require security in the cases stated in that section of the charter, had, itself, required the security, the justices of the peace would have had jurisdiction to carry the act into effect. But the by-law, enacted under the authority of the charter, is as valid a law as if it had been enacted by congress, and the justices of the peace are equally authorized to enforce it. That such was the understanding of congress may be inferred from their not having designated any other officer or tribunal to require the security and to commit to labor for not complying with the requisition; and from their having required the marshal to receive and safe keep, in the county gaol, all persons committed thereto under the authority of that act; for the provision would have been nugatory if there had been no authority to commit, nor any person liable to be committed. We are, therefore, of opinion, that a justice of the peace of the county of Washington has authority under the charter, and the by-law of the 16th of December, 1812, to cause vagrants, &c., to be brought before him, and to require security for their good behavior, and to order them to be confined to labor, according to the provisions of the by-law, so far as they are authorized by the charters of 1802 and 1812, and not inconsistent with the new charter of 1820. The sixth section of the by-law of 16th December, 1812, was passed under the authority of the sixth section of the amended charter of May 4th, 1812, which authorizes the corporation "to cause all disorderly persons," and "all who are guilty of open profanity, or grossly indecent language or behavior publicly in the streets," to give security, &c. But the by-law authorizes the justice of the peace to require security of all disorderly persons, and persons guilty of profane or indecent language or behavior, although the profanity be not "open," and the language or behavior neither "grossly" indecent, nor "publicly;" nor "in the streets." That part of the by-law which requires security to be given by persons guilty of simple profane or indecent language or behavior, is not warranted by the charter, and is void; but so far as it requires security to be given by "disorderly persons," it is warranted by the charter of 1812, and is not inconsistent with that of 1820.

The warrant of commitment, in the present case, states that Julia Reed stands convicted before the justice, on the oath of John W. Dexter, of being a disorderly person, and therefore states a good cause for requiring security according to the by-law; and it states that she failed to give security for her good behavior; but it does not state that she was required to give security; nor in what sum; nor for what period of time, so that it might appear that the sum and time were "reasonable," and that she might know what security to provide; for the confinement is not to be for any number of days or months absolutely, but, in the words of the charter of 1820, "until such security shall be given, not exceeding one year at a time." Nor does the warrant state that she refused, or was unable to give the security required.

The commitment also requires the intendant to keep her at hard labor. This implies a degree of labor more severe than that of ordinary, moderate, labor, and is not warranted by the by-law, or the charter. The labor was not intended as a punishment, but as the means of indemnifying the corporation for the expense of maintaining the person in confinement. For these errors and defects in the commitment, the court is of opinion that the prisoner must be discharged.

THRUSTON, Circuit Judge, did not entirely concur in all the views of the subject stated in the opinion of the court, particularly in regard to the exceptions taken to the form and terms of the warrant of commitment.

## Case No. 11,635.

### In re REED.

[6 Biss. 250;[1] 11 N. B. R. 94; 7 Chi. Leg. News, 76.]

District Court, N. D. Illinois. Nov., 1874.

BANKRUPTCY—PROVING CLAIM—STATUTE OF LIMITATIONS—PROOF OF WAIVER.

1. It seems. that a debt barred by the statute of limitations of the state where the bankrupt resides cannot be proved in bankruptcy.

[Cited in Nicholas v. Murray, Case No. 10,223.]

2. Less strictness of proof is required to establish a promise by the debtor before the bar of the statute has attached. than to prove a new promise after the debt has become barred.

3. Interest will not be allowed where the debt depends upon the new promise.

In bankruptcy. This was a re-examination of the claim of J. Willard Fox, a creditor of said bankrupt [C. W. Reed], whose claim was disputed by the assignee.

A. S. Bradley, for assignee, cited, in support of the plea, In re Kingsley [Case No. 7,819]; In re Hardin [Id. 6,048]; In re Cornwall [Cases Nos. 3,250, 3,251]; Ang. Lim. § 247, note, and cases therein referred to; Wetzell v. Bussard, 11 Wheat. [24 U. S.] 309;

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

Bell v. Morrison, 1 Pet. [26 U. S.] 351; Ayers v. Richards, 12 Ill. 146; Dickerson v. Sutton, 40 Ill. 403; In re Anderson [Case No. 351].

[That the evidence was not sufficiently positive as to the time of the promise or its extent, or that the bankrupt admitted understandingly, before his bankruptcy, the receipt of the goods, and that nothing had been paid; that the evidence is vague and contradictory as to the new promise, while it sufficiently appears that the bankrupt declined and resisted payment successfully of any part of the claim up to the time of his bankruptcy. Wetzell v. Bussard, 11 Wheat. [24 U. S.] 315; Bell v. Morrison, 1 Pet. [26 U. S.] 360; Ayers v. Richards, 12 Ill. 148; Dickerson v. Sutton, 40 Ill. 404; In re Anderson [supra].[2]

McDaid, Wilson & Picher, for creditor, cited, against the plea, the opinion of Judge Blatchford in Re Ray [Case No. 11,589]; In re Perry [Id. 10,998]; and also argued that the running of the statute was arrested by bankrupt's acknowledgment, and that a suit was brought by the creditor, the result of which is not shown by the evidence. That the acknowledgment was sufficient, counsel cited Wooters v. King, 54 Ill. 343.

BLODGETT, District Judge. I shall allow the defense of the state statute of limitations by the assignee, to the claim of a creditor seeking to prove his debt in bankruptcy wherever that defense might have been made in a suit in the state where the debtor resides. From an examination of the law, upon which there are, however, conflicting decisions, I consider the above conclusion to be supported by the weight of reason and authority, and shall adhere to this decision unless the law is otherwise settled by the appellate court.

As to the point of a new promise, I am of the opinion that the evidence in this case showed an acknowledgment by the debtor before the five years had expired, which was sufficient to prevent the statute from running, and that acknowledgment before the bar might be sufficient, although it would not amount to a new promise after the debt was barred. I shall, therefore, allow the claim, without interest, however, as I do not consider it a proper case for the allowance of interest against the estate.

NOTE. The statute of limitations ceases to run against the creditor of a bankrupt at the commencement of the proceedings in bankruptcy, and, if not barred at that time, his claim may be proved afterwards, though at the time of proof it would be otherwise barred. In re Eldridge [Case No. 4,331]. A debt barred by the statute of limitations of the state in which the proceedings in bankruptcy are pending is not provable against the estate of the bankrupt, and cannot be reckoned in computing the number necessary to join in an involuntary petition. In re Noeson [Id. 10,288].

2 [From 11 N. B. R. 94.]

## Case No. 11,636.

### In re REED.

[26 Int. Rev. Rec. 35.]

Circuit Court, D. Massachusetts. June 12, 1879.

NAVY—COURT-MARTIAL — JURISDICTION— PAYMASTER'S CLERK — REVISING SENTENCE— DETACHED MEMBER OF COURT.

1. The clerk of a paymaster in the navy is a person in the naval service of the United States, and subject to the jurisdiction of a naval court-martial for offences against the articles for the government of the navy of the United States.

2. The convening officer of a naval court-martial has authority to send back to the court, the record of the proceedings of the court in any trial, with the finding and sentence, for the reconsideration of such court as to the revision of the sentence.

3. A naval general court-martial was convened for the trial of A. B. and such others as should be brought before it. After the sentence of A. B. was agreed upon, the court sent the record of the trial, with its findings and sentence, to the convening officer for approval, and proceeded with other trials,—lasting three days, —at the end of which the record, etc., in the case of A. B., which had been sent back for a revision of the sentence, was taken up, and a revised sentence agreed upon, which was duly approved by the convening officer. Held, that the intermission of three days in the trial of A. B., the court being occupied with the other trials, was no violation of article 45 of the articles for the government of the navy.

4. A naval general court-martial was held for the trial of A. B. and of such others as should be brought before it. After the sentence of A. B. was agreed on and recorded, and the record, etc., sent to the convening officer for approval, one of the members was detached and another officer took his place on the court, which proceeded with other trials. At the conclusion of these trials, the record in the case of A. B. having come back for revision of sentence, the new member left the court, and the former member resumed his seat, and the court then gave a revised sentence, which was duly approved by the convening officer. Held, that this did not make the sentence of A. B. illegal.

Alvin R. Reed, the petitioner, on the 14th April, 1879, filed his petition, duly signed and sworn to, in the circuit court, addressed to Judge LOWELL, circuit judge, in which he complains that he is unlawfully imprisoned on the United States ship Wabash, now in the harbor of Boston, and at the navy-yard in said Boston, by Captain S. L. Breese, the officer in command of the said Wabash, and avers that the said S. L. Breese claims to restrain him of his liberty, as he is informed and believes, by virtue of a certain paper or sentence purporting to be a sentence made by a naval court-martial, or by virtue of an order or warrant issued by the secretary of the navy of the United States, based on said sentence, which sentence, as he is informed and believes, is null and void, and without authority in law, and in violation of his constitutional rights as a citizen of the United States, as will more fully appear from the record of the proceedings of the said court-martial, a copy of which, including a copy of said pretended sentence, is